UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DELBERT B. MIKEALS,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:13-cv-05902-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On October 14, 2011, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2007. See ECF #11, Administrative Record ("AR") 17. That application was denied upon initial administrative review on December 15, 2011, and on reconsideration on February 10, 2012. See id. A hearing was held before an administrative law judge ("ALJ") on

ORDER - 1

May 29, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 30-66.

In a decision dated June 7, 2013, the ALJ determined plaintiff to be not disabled. See AR 17-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 10, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 416.1481. On October 21, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on December 24, 2013. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in failing to properly consider whether plaintiff had a severe cognitive disorder; (2) in discounting plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity ("RFC"); and (4) in relying on the vocational expert's testimony to find plaintiff capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court agrees the ALJ erred in failing to properly consider whether plaintiff had a severe cognitive disorder, in assessing plaintiff's RFC and in relying on the testimony of the vocational expert, and therefore in determining plaintiff to be not disabled. Accordingly, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

I.        The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff's morbid obesity, a sleep disorder/sleep apnea, hyperligidemia, hypertension, anxiety and depression to be severe impairments. See AR 19. Plaintiff argues the ALJ erred in failing to also properly consider whether he had a severe impairment consisting of a cognitive disorder, and in particular in failing to properly evaluate the medical opinion evidence in the record in regard thereto. The Court agrees. With respect to that

ORDER - 4

opinion evidence, the ALJ found:

> At a November 2011 psychological evaluation, the claimant complained of depression and some anxiety related to finances and health problems. On mental status examination, affect was euthymic. Psychomotor movements were slow and labored but this was thought to be secondary to obesity. Thought processes were intact but he was tangential at times. Speech was slow and impoverished. Long-term memory was poor for dates and details but short term memory was intact and immediate/working memory was intact. He refused to complete serial 7's or 3's. He recited 3 digits forward and 2 backward. Abstract thought was impaired. Insight and judgment were also impaired. Scott Alvord, Psy.D. provided a provisional diagnosis of cognitive disorder. The claimant appeared to struggle with neurocognitive deficits but no formal psychological testing was performed. Dr. Alvord diagnosed mood disorder with depression and anxiety and assessed a GAF [score] of 50.[2] He opined the claimant was moderately impaired in the ability to manage household tasks and care for himself primarily related to medical issues, moderately impaired in the ability to follow instructions, and mildly to moderately impaired in concentration, persistence and pace (Exhibit 3F). The opinion of Dr. Alvord is given some weight. However, it is based in part, on the claimant's physical functioning, and he does not have the expertise to evaluate limitations related to the claimant's physical condition. Although he indicates the claimant appears to suffer from significant cognitive deficits, this is not supported by any testing or other records. However, given the claimant's moderate impairment in the ability to follow instructions and mild to moderate impairment in concentration, persistence or pace, I find he is limited to simple, routine tasks. His depression and anxiety also support limitations in social interaction.

AR 22.

Defendant argues the ALJ did not err in failing to find a severe cognitive disorder – and reasonably excluded discussion thereof – at step two, because Dr. Alvord's diagnosis was only provisional, which is insufficient to establish the existence of a medically determinable disabling impairment. See Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) ("In claims in which

---

[2] A GAF, or global assessment of functioning, score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting DSM-IV-TR at 34); see also England, 490 F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

ORDER - 5

there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.") (quoting SSR 96-4p, 1996 WL 374187, at *1-2).

As plaintiff points out, however, the real issue is not whether Dr. Alvord's provisional diagnosis satisfies step two's medically determinable impairment requirement, but rather whether the questions raised by Dr. Alvord's evaluation report concerning the nature and existence of that diagnosis, triggered the ALJ's duty to fully and fairly develop the record in this case. The Court finds that it did, and that the ALJ failed to fulfill that responsibility. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). That duty is triggered where the record contains "[a]mbiguous evidence" or the ALJ finds the record to be inadequate to allow for proper evaluation thereof. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).

Although the ALJ did not so specifically find, it is clear that the record is inadequate to allow for the proper evaluation of the nature and existence of plaintiff's cognitive disorder. The ALJ is correct that Dr. Alvord's provisional diagnosis is not supported by psychological testing, and indeed Dr. Alvord admitted as much. See AR 283. Dr. Alvord, however, clearly indicated that such testing would shed needed light on the issue. See id. ("I believe he struggles with IQ and/or neurocognitive deficits although without formal psychological testing it is very difficult to make a statement along these lines."). In addition, while the ALJ also may be correct that "other records" – in the sense of records from other medical sources – of a cognitive diagnosis are lacking, Dr. Alvord's own observations and mental status examination results, which clearly form the basis of his suspicions concerning that diagnosis, constitute valid, objective medical

ORDER - 6

evidence. See AR 284-87; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting depression diagnosis is competent evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

II.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ found plaintiff had the residual functional capacity:

> **. . . to perform less than the full range of light work . . . He can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk 2 hours out of an 8-hour day and sit 6 hours out of an 8-hour day.  He cannot climb ladders, ropes or scaffolds.  He can occasionally**

ORDER - 7

> **climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  He should avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation and other pulmonary irritants and to heights, hazards, and heavy equipment.  He should avoid concentrated exposure to extreme cold and heat, wetness, humidity and vibration.  He is limited to simple, routine tasks with ability to read and write at an eighth grade level, add and subtract and not require any over the shoulder supervision.  He should have no public contact and only superficial contact with coworkers.  Superficial means more than none but less than occasional.**

AR 20 (emphasis in original).  But because as discussed above the ALJ erred in failing to fully and fairly develop the record concerning the nature and existence of plaintiff's cognitive disorder, it is far from clear that this RFC assessment is supported by substantial evidence.  Defendant argues the ALJ's error at step two is harmless, because that assessment reasonably accommodates the cognitive deficits Dr. Alvord noted.  The Court disagrees.

An error will be deemed harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").  Where an ALJ properly considers later in the sequential disability evaluation process the impairments he or she failed to properly consider at step two thereof, that failure will not be considered harmful. See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider plaintiff's obesity at step two harmless, because ALJ did not err in evaluating claimant's impairments at later steps).  Dr. Alvord's evaluation report suggests the limitations stemming from plaintiff's cognitive disorder may be far greater than the ALJ's restrictions to performing simple, routine tasks, with the ability to read and write at an eighth grade level, add and subtract and no requirement of any over the shoulder supervision.

Dr. Alvord, for example, strongly indicated plaintiff may have significant problems

ORDER - 8

working in a normal work setting, commenting that "given his presentation during the evaluation, it is very difficult to imagine that he was successful as an entrepreneur [prior to his alleged onset date of disability] although he insisted he did manage 'to stay in business for a few years.'" AR 284.  In that regard, Dr. Alvord went on to report:

> . . . He did acknowledge "I had times where the business fell apart and I had to pick it back up from the very beginning and then it would fall apart again and I'd pick it back up".  Again given concerns regarding neurocognitive deficits, it is my impression that his success was likely somewhat less than he endorsed.  He has evidently never functioned in an occupational setting that did not involve self[-]employment.

Id.  In addition, Dr. Alvord stated he did not think plaintiff "maintains the intellectual and/or neurocognitive competencies to adaptively manage his own finances" (AR 285), which clearly also suggests the existence significant cognitive limitations in the work place that extend beyond the above restrictions adopted by the ALJ.

Dr. Alvord also noted that "[o]verall [plaintiff's] adaptive functioning from a psychiatric perspective is considered moderately impaired," again an area of functional limitation beyond that found by the ALJ. AR 287.   Dr. Alvord concluded his evaluation report by once more reiterating his opinion that "it is very difficult to believe" plaintiff "was ever very successful" in running his prior business – noting he had "acknowledge[d] episodes of 'the business falling apart'" – thus calling into question his current ability to functional vocationally as well. Id. Lastly, as noted above, Dr. Alvord assigned plaintiff a GAF score of 50, which indicates serious social, occupational or school functioning.

III.   The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

ORDER - 9

1999)]; 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity.  See AR 60-61.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs.  See AR 60, 62.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy.  See AR 24.  But because as discussed above the ALJ erred in failing to develop the record at step two regarding plaintiff's cognitive disorder and thus in assessing his RFC, it cannot be said that the vocational expert's testimony is supported by substantial evidence at this time, and therefore the ALJ erred in relying on it to find plaintiff not disabled here at step five.  See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("If the assumptions in the hypothetical [question] are not supported by the record, the opinion of the

ORDER - 10

vocational expert that claimant has a residual working capacity has no evidentiary value.").

Plaintiff argues the ALJ also erred in relying on vocational expert testimony that conflicts with the Dictionary of Occupational Titles ("DOT"). Again, the Court agrees. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). Further, the ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

At the hearing, the vocational expert testified in response to the hypothetical question the ALJ posed – which as noted above limits plaintiff to less than a full range of light work – that a hypothetical individual with the limitations described therein could perform the two jobs of small products assembler and packager/sorter, both defined by the DOT as requiring the ability to perform at the full level of light work. See AR 24, 62; DOT 706.684-022; DOT 559.687-074. Clearly, a limitation to less than a full range of light work is not consistent with the ability to perform jobs involving the full range of light work. Defendant admits the ALJ's restriction to standing and/or walking for no more than two hours in an eight-hour day "raises the question of a possible erosion of the occupational base at the light exertional level," but argues this issue was properly dealt with by obtaining vocational expert testimony. ECF #23, p. 12.

But while it is true that an ALJ properly may rely on vocational expert testimony to find a

ORDER - 11

claimant is able to perform other jobs with functional limitations more restrictive than permitted by the DOT, as noted above the ALJ still must inquire as to whether that testimony conflicts with the DOT – and if so, expressly resolve that conflict in his or her decision – before relying on it to find the claimant not disabled at step five.  In this case, the ALJ did ask the vocational expert whether there was any inconsistency with the DOT in regard to the ability to perform at the less than light exertional work level, but clearly the vocational expert's response that none existed is incorrect.  See AR 64-65.  The ALJ, furthermore, failed to resolve that apparent inconsistency in his decision.  Accordingly, this too constitutes reversible error.

IV.     Remand for Further Administrative Proceedings Is Appropriate

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

ORDER - 12

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's cognitive disorder, his residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 7 day of August, 2014.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13